PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| JOHN O. HENDERSON, *et al.* | ) | |
| | ) | CASE NO. 5:18CV1284 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CHESAPEAKE EXPLORATION, LLC, *et al.*, | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Resolving ECF No. 4] |

Pending before the Court is a Motion to Remand to State Court filed by Plaintiffs John O. Henderson, Virginia Henderson, and their co-guardians Susan Culp and Sharon Maple ("Plaintiffs"). ECF No. 4. Defendants Chesapeake Exploration, LLC, and CHK Utica, LLC ("Defendants"), responded (ECF No. 5), and Plaintiffs replied (ECF No. 6). For the reasons that follow, the Court denies Plaintiffs' motion to remand.

## I. Background

This case was removed from the Court of Common Pleas, Carroll County, Ohio, on May 2, 2018, pursuant to 28 U.S.C. §§ 1441 and 1446, and based on diversity jurisdiction under 28 U.S.C. § 1332. ECF No. 1. In their Complaint, Plaintiffs allege that Defendants purported to enter into an oil and gas Amendment and Ratification agreement with Mr. and Mrs. Henderson (the "Henderson Lease") although the Hendersons were not competent to understand the terms of any legal agreement. ECF No. 1-2 at PageID#: 16. Plaintiffs seek a declaratory judgment to

(5:18cv1284)

rescind the agreement and to quiet title to the oil and gas rights associated with the Henderson Property. *Id.* at PageID#: 17-18.

Defendants removed the case, arguing that they are entitled to federal-court jurisdiction under 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000.00. ECF No. 1 at PageID#: 3. Plaintiffs argue that Defendants have failed to prove by the preponderance of the evidence that the amount in controversy exceeds $75,000.00, and therefore, the Court cannot take subject-matter jurisdiction and must remand the case to state court.[1] ECF No. 4.

## II. Legal Standard

Defendants seeking removal on the basis of diversity jurisdiction bear the burden to prove by the preponderance of the evidence that the complete diversity and amount in controversy requirements are met. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553-54 (2014). The right of removal is determined by review of a plaintiff's pleading at the time of the petition for removal. *Ramski v. Sears, Roebuck, & Co.*, 656 F.Supp. 963, 965 (N.D. Ohio 1987). "A court may, however, look at subsequent pleadings and proceedings in a case . . . to the extent that they 'shed light on the facts as they existed at the outset of the litigation and on the actual interests of the parties.'" *Hrivnak v. NCO Portfolio Mgmt.*, 723 F. Supp. 2d 1020, 1024 (N.D. Ohio 2010) (citing *American Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 151 n.3 (7th Cir. 1981)). A district court has "wide discretion to allow affidavits, documents and even a

---

[1] Defendants have established, and Plaintiffs do not contest, that complete diversity exists between the parties. ECF No. 1 at PageID#: 3, ¶¶ 10-14. Plaintiffs challenge only whether the minimum amount-in-controversy requirement is satisfied.

2

(5:18cv1284)

limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (citations omitted). The removal petition is to be strictly construed, and the district court must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the non-removing party. *Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

In actions seeking a declaratory judgment, the amount in controversy is measured by "the value of the object of the litigation." *Northup Properties, Inc. v. Chesapeake Appalachia, LLC*, 567 F.3d 767, 770 (6th Cir. 2009) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). In the context of an oil and mineral lease, courts in the Sixth Circuit are to "calculate the amount in controversy by accounting for the mineral interest in the land, and not merely the possessory interest.'" *Northup Props.*, 567 F.3d at 770 n.1; *Caldwell v. OHTEX Energy Co.*, 2011 WL 1465997, at *2 (S.D. Ohio, April 18, 2012). "In valuing mineral leases, federal courts require competent proof." *Id*.

### III. Analysis

In support of its removal to federal court, Defendants supplied the Court with the declaration of Alexander Sullred Wolfe, a Land Supervisor who works for Chesapeake. ECF No. 1-4. Mr. Wolfe's declaration provides four grounds on which Defendants contend the Court could value the Hendersons' mineral lease at greater than $75,000.00. *Id.*; *see also* ECF No. 5 at PageID#: 45. Defendants argue as follows:

> (1) the fair market value of the lease, or the cost to Chesapeake to reacquire similar acreage, exceeds $75,000; (2) Chesapeake has already extracted over $75,000 of production attributable to just the portion of the lease that Chesapeake included in a drilling unit; (3) The estimated future production attributable to the

3

(5:18cv1284)

> portion of the lease in that unit exceeds $75,000; and (4) if plaintiffs obtain [a] declaration that the lease is invalid, Chesapeake may need to temporarily or permanently shut in the well in the unit in which the lease is included, which would cause Chesapeake significantly more than $75,000 in damages and lost revenue . . . .

ECF No. 5 at PageID#: 45.

Plaintiffs' argument in support of their motion to remand reduces to two distinct propositions. First, they argue, Mr. Wolfe is not an expert witness, and his assertions in support of the above-listed arguments amount to "rank speculation." ECF No. 4-1 at PageID#: 42. Second, Plaintiffs contend that Mr. Wolfe's declaration is not competent to resist remand because it is self-serving. *See id.* at PageID#: 41. Plaintiffs' arguments, whether taken alone or together, are not persuasive.

### 1. Defendants Are Not Obligated to Advance Expert Testimony

Cases in this Circuit have expressed a preference for expert attestations in valuating mineral leases on undeveloped tracts, where the resources are unproven. *Caldwell ex. Rel. Caldwell v. OHTEX Energy Co., LLC*, 2011 WL 1465997, at *2-3 (S.D. Ohio Apr. 18, 2011); *see also United States v. 2,847.58 Acres of Land, More or Less, in Bath Counties, et al., Com. of Ky.*, 529 F.2d 682, 685 (6th Cir. 1976) ("We appreciate the fact that there can be no absolutes in the speculative area of oil reserves. Reliance must necessarily be placed on expert testimony."); *Kemerer v. Chesapeake Exploration, LLC*, 2013 WL 1337376, at *3 (N.D. Ohio Mar. 29, 2013).

Relying on those authorities, Plaintiffs argue that Mr. Wolfe's non-expert declaration is not reliable. ECF No. 4-1 at PageID#: 40-42. If Defendants had wanted to prove that the value of the Henderson Lease exceeded $75,000.00, Plaintiffs suggest, they should have engaged an

4

(5:18cv1284)

expert. *See id.* Plaintiffs read prior cases to hold, in essence, that all mineral-lease valuations must be supported by expert attestations for purposes of satisfying the jurisdictional amount-in-controversy requirement, at least when that element is contested.

Plaintiffs misconstrue the cases they cite. Prior cases requiring or encouraging expert attestations have arisen in scenarios in which the land tracts were undeveloped and the minerals beneath them were unproven. *Caldwell*, 2011 WL 1465997, at *5 ("It may be that wells on the land would be productive. It may be as likely that wells would be dry."); *Acres of Land*, 529 F.2d at 685 ("[V]alue witnesses . . . resorted to a rule of thumb in estimating the amount of oil still remaining in place beneath the condemned tracts."); *Kemerer*, 2013 WL 1337376, at *3 n.5 ("A well has not been drilled on the property."); *see also Usery v. Anadarko Petroleum Corp.*, 606 F.3d 1017, 1020 (8th Cir. 2010) (the affiant "assum[ed] that the putative well was as productive as a completed well that is three miles from it [in a different shale]").

The case most closely aligned with the one at bar is *Northup Props., Inc. v. Chesapeake Appalachia, LLC*, 567 F.3d 767, 769-71 (6th Cir. 2009). In *Northup*, the Sixth Circuit credited the non-expert affidavit of the defendant's petroleum engineer, which estimated the value of a mineral lease based on "future cash flows" and the "discounted present value" of a gas well that was already existent and productive. *Id.* at 769-71.

The purpose of encouraging expert testimony in valuating unproven mineral reserves is to aid the Court in assessing that which is otherwise difficult or impossible for a layperson to assess. When land is undeveloped and minerals are unproven, it is difficult or impossible for a layperson to gauge the value of a mineral lease, and any lay assertions about its value are rarely

5

(5:18cv1284)

more than conjecture. By contrast, when land that is the subject of a mineral lease has already been drilled and is productive, the x-factor is eliminated, and there is little need for expert investigation or explanation to support a conclusion about the likely value of the lease. A layperson with personal knowledge about the productivity associated with the lease — in this case, Mr. Wolfe — is competent to testify about past production and future projections, and his testimony is not inherently speculative.

Defendants are obligated to show that "the value of the consequences which may result from the litigation" exceeds $75,000. *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 253 (6th Cir. 2011). Mr. Wolfe attests, based on personal knowledge of the Henderson Lease, the past productivity of the well on the Henderson property, and the anticipated future revenue of that well, that the potential losses resulting from an adverse outcome in this litigation, more likely than not, would exceed $75,000.00. ECF No. 1-4. His attestations are based on business records and firsthand observation, not speculation. *Id.* at PageID#: 25-26, ¶¶ 3-4. Defendants had no obligation to put forward an expert witness to accomplish the same thing with expert investigation that Mr. Wolfe accomplished with personal knowledge.

### 2. Mr. Wolfe's Self-Serving Declaration Is Competent Evidence

Plaintiffs also suggest that Mr. Wolfe's declaration is not competent to support jurisdiction because it is self-serving. *See* ECF No. 4-1 at PageID#: 41; *Caldwell*, 2011 WL 1465997, at *2 ("In valuing mineral leases, federal courts require competent proof."). This argument, however, goes to evidentiary weight, not competency. An interested witness's testimony is not excluded simply because it is partisan. *Santiago-Ramos v. Centennial P.R.*

(5:18cv1284)

*Wireless Corp.*, 217 F.3d 46, 53 (1st Cir. 2000) ("[A] party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent . . . ."); see *Am. Speedy Printing Ctrs., Inc. v. AM Marketing, Inc.*, 69 F. App'x 692, at *4 (6th Cir. 2003) (table) (party's affidavit was insufficient to prevail on summary judgment, but "[w]e do not, however, reach that conclusion because the affidavit was 'self-serving'").

An interested witness's testimony is often less persuasive to a factfinder than testimony by a disinterested third-party witness. But in this case, Plaintiffs have put forward no evidence of their own to contest Mr. Wolfe's attestations. Because Mr. Wolfe's declaration is competent to establish jurisdictional facts and because the assertions therein have gone unchallenged, the Court has no reason to discredit it.

## IV. Conclusion

For the reasons given, the Court finds that Defendants have established the Court's jurisdiction by the preponderance of the evidence, and Plaintiffs' motion to remand is accordingly denied.

IT IS SO ORDERED.

| | |
|---|---|
|   September 26, 2018 |   */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |