PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JOHN O. HENDERSON, *et. al.*, | ) |
| | ) CASE NO. 5:18CV1284 |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) JUDGE BENITA Y. PEARSON |
| CHESAPEAKE EXPLORATION LLC, *et al.*, | ) |
| | ) |
| | ) **MEMORANDUM OF OPINION AND** |
| Defendants. | ) **ORDER** [Resolving ECF No. 21] |

Pending is Defendants Chesapeake Exploration, L.L.C. and CHK Utica L.L.C.'s motion for summary judgment. ECF No. 21. The matter has been fully briefed. *See* ECF Nos. 21, 25, and 26. For the reasons given below, Defendants' motion for summary judgment is denied.

## I. Background

Plaintiffs John O. Henderson and Virginia E. Henderson (the "Hendersons") are two elderly individuals who own over 100 acres of property in Carroll County, Ohio.[1] ECF No. 21 at PageID #: 147. In 2015, the Probate Court of Carroll County appointed Plaintiffs Susan Culp and Sharon Maple as guardians of the Hendersons due to their dementia and Alzheimer's disease. ECF No. 21-5 at PageID #: 201-04. Plaintiffs seek declaratory relief voiding two contractual agreements the Hendersons entered into in 2010 and 2013, years before they were appointed guardians.

---

[1] Ms. Henderson passed away after this case was filed. *See* ECF No. 21 at PageID #: 146 n.1

(5:18CV1284)

In 2010, the Hendersons entered into an agreement ("2010 Agreement") with Anschutz Exploration Corporation ("Anschutz") to lease part of their land for oil and gas drilling. ECF No. 21-1. Although their signatures were affixed at the bottom of the lease document, the Hendersons do not remember entering into this agreement. *See* ECF No. 21-1 at PageID #: 165; 21-4 at PageID #: 192. None of the Defendants were involved in the agreement to lease the Hendersons' land in 2010. *See* ECF No. 21-1.

In 2012, Anschutz assigned its interest in the lease agreement with the Hendersons to Defendants. ECF No. 21-8 at PageID #: 267, ¶¶ 6-8. In 2013, three years after the 2010 Agreement was signed, Defendants and the Hendersons signed an Amendment and Ratification to the original contract ("2013 Amendment"), granting Defendants license to drill and produce twice the size of the oil and gas development units on their land than the Hendersons agreed to in 2010. *See* ECF No. 21-3 at PageID #: 171-73. Defendants subsequently created a drilling unit on the land that continues to produce oil and gas. ECF No. 21 at PageID #: 148. The Hendersons signed the 2013 Amendment, but they "have been consistently unable to talk about the subject lease agreement" and "have denied that they entered into any agreements related to their property." *See* ECF No. 21-3 at PageID #: 173; ECF No. 21-4 at PageID #: 192.

In 2014, Ms. Henderson's daughters, Plaintiffs Susan Culp and Sharon Maple, sought guardianship over the Hendersons. *See* ECF No. 21-5. As mentioned above, Culp and Maple were appointed guardianship in 2015. *Id.*

Before Culp and Maple sought guardianship, the Hendersons had signed a land deed with a separate party in 2014. ECF No. 21-4 at PageID #: 190. Litigation over the enforcement of

2

(5:18CV1284)

this real estate transaction ensued but the matter was settled in 2017. *Id.* Dr. Matthew Inman, the Hendersons' treating physician since 2006, was deposed in that case and Plaintiffs disclosed that deposition to Defendants during discovery.[2] *See* ECF No-21-4 at PageID # 189-90; *see also* ECF No. 21-6. In his deposition, Dr. Inman testified about his treatment of the Hendersons and provided opinions about their medical conditions, specifically dementia and Alzheimer's disease. *See* ECF No. 21-6 at PageID #: 210-213, 217-19.

On May 2, 2018, Plaintiffs filed this suit seeking to avoid enforcement of the 2010 Agreement and the 2013 Amendment on the basis that the Hendersons were not competent to enter the contract. ECF No. 1-2. Defendants removed the case based on diversity jurisdiction. ECF No. 1.

## II. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has

---

[2] Plaintiffs disclosed Dr. Inman's deposition and opinions to Defendants on March 8, 2019, seven days in advance of the cutoff date of March 15, 2019 for expert disclosures. *See* ECF No. 21-4 at PageID #: 199; ECF No. 14 at PageID #: 108.

3

(5:18CV1284)

failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). To defeat the motion, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

"The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). The fact under dispute must be "material," and the dispute itself must be "genuine." A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Scott*, 550 U.S. at 380. In determining whether a factual issue is "genuine," the Court assesses whether the evidence is such that a reasonable jury could find that the non-moving party is entitled to a verdict. *Id.* ("[Summary judgment] will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

4

(5:18CV1284)

## III. Discussion

### A. Dr. Inman's Deposition Testimony

As a preliminary matter, the Court must determine whether Dr. Inman's deposition testimony from a different case about the Hendersons' incompetency may be considered when ruling on the motion. Dr. Inman's deposition was taken in a separate case in which Plaintiffs similarly sought to avoid enforcement of a different contract because they claimed that the Hendersons lacked capacity to enter the agreement. ECF No. 21-6. Plaintiffs rely heavily on Dr. Inman's deposition in their opposition to Defendants' summary judgment motion. *See* ECF No. 25.

The Court ordered the parties to provide all expert discovery to each other by March 15, 2019. ECF No. 14 at PageID #: 109. Although Plaintiffs did not provide an expert report or summary of opinions or facts, they provided a copy of Dr. Inman's deposition to Defendants seven days before the expert discovery cutoff date. *See* ECF No. 21-4 at PageID #: 189-90, 199; ECF No. 14 at PageID #: 108.

Defendants raise two objections to consideration of Dr. Inman's deposition testimony at summary judgment. First, Defendants argue that Plaintiffs have not complied with the Rule 26 expert disclosure requirements and so the Court must decline to consider the corresponding evidence. ECF No. 26 at PageID #: 356-59; ECF No. 21 at PageID #:153-54. Second, Defendants claim that the deposition testimony is inadmissible hearsay that may not be considered at summary judgment. ECF No. 26 at Page ID #: 354-56. The Court addresses each issue below respectively.

5

(5:18CV1284)

### 1. Rule 26

Rule 26 requires parties relying on expert testimony to make disclosures to the other party during discovery. Fed. R. Civ. P. 26. The rule designates two kinds of experts and their respective disclosure requirements. *Id*. at (a)(2)(B)-(C). An expert retained by the attorneys to testify as an expert must provide a written report. *Id.* at (a)(2)(B). An expert witness not retained by the attorneys need not provide a written report but still must provide a "summary of the facts and opinions to the which the witness is expected to testify." *Id.* at (a)(2)(C)(ii). A treating physician generally falls under the latter category of experts. Fed. R. Civ. P. 26(a)(2)(C) advisory committee's notes to 2010 amendment ("Frequent examples include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony."). As Defendants correctly assert, however, the "determinative issue" for whether a treating physician must provide a written report rather than a brief summary is "the scope of the proposed testimony." *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 869 (6th Cir. 2007). A treating physician may still need to provide a written report, rather than a summary of facts and opinions, if his testimony "strays from the core of the physician's treatment." *Id.*

In this case, Dr. Inman does not have to provide a written report because he relied on "what he . . . learned through actual treatment and from the plaintiff's records up to and including that treatment." *Id.* Although Dr. Inman's deposition was taken in a different case, he testified about the Hendersons' mental incapacity since he became their treating physician in 2006. ECF No. 21-6 at PageID #:208, 211, 214, 216. Dr. Inman's testimony includes the Hendersons' symptoms he witnessed, their lack of progress over the years of treatment, and his

(5:18CV1284)

observations as their treating physician. *Id.* at PageID #: 208-23. These facts were derived from what he observed during the course of treating the Hendersons. Because Dr. Inman's testimony does not "stray from the core of the physician's treatment," Plaintiffs' expert disclosures are governed under Rule 26(a)(2)(C). *Fielden*, 482 F.3d at 869.

### a. Rule 26 disclosure requirements

As discussed above, parties relying on Rule 26(a)(2)(C) expert testimony must provide a "summary of facts and opinions." Defendants posit that Plaintiffs have not satisfied Rule 26 and must be accordingly sanctioned. ECF No. 26 at PageID #: 356-59. Plaintiffs argue that they have satisfied the expert disclosure requirements by referring to Dr. Inman's deposition in their initial disclosures and responses to Defendants' interrogatories. ECF No. 25 at PageID #: 280-82. But deposition testimony itself is not enough to satisfy the Rule 26(a)(2)(C) disclosure requirements. *See Lane v. Walgreen Co.*, 2014 WL 2881543, at *5 (S.D. Ind. June 24, 2014). Merely referring to the subject matter of the expert testimony, without "a brief account of the facts" is similarly insufficient. *Little Hocking Water Ass'n, Inc, v. E.I. DuPont de Nemours and Co.*, 2015 WL 1105840, at *9 (S.D. Ohio Mar. 11, 2015). Dr. Inman's deposition alone, absent a separate "summary of facts and opinions," is insufficient to satisfy Plaintiff's disclosure requirements. Fed. R. Civ. P. 26(a)(2)(C)(ii). Therefore, Plaintiffs have not satisfied the Rule 26 disclosure requirement.

### b. Harmlessness

Nevertheless, a court may still consider evidence that is not properly disclosed if the failure to disclose is "substantially justified or harmless." Fed. R. Civ. P. 37(c). Evidence not

7

(5:18CV1284)

meeting the disclosure requirements should be excluded "unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Bessemer & Lake Erie R.R. Co. V. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010). As the noncompliant party, Plaintiffs have the burden to prove harmlessness. *Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003).

The Court has broad discretion to determine the appropriate sanction for a Rule 26 violation. *See, e.g.*, *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003); *Murphy v. Magnolia Electric Power Ass'n*, 639 F.2d 232, 234 (5th Cir. 1981). The Seventh Circuit has adopted a four-factor test to determine whether failing to disclose under Rule 26 is harmless. *David*, 324 F.3d at 857. Under this test, courts consider: (1) the prejudice or surprise to the opposing party; (2) the breaching party's ability to cure the prejudice; (3) the likelihood of disruption to trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *Id*. Although the Sixth Circuit has not explicitly adopted this test for evaluating harmlessness, district courts within it have considered the factors useful in determining whether a party's Rule 26 violation is harmless. *See, e.g.*, *Static Control Components, Inc. v. Lexmark Intern, Inc.*, 749 F.Supp.2d 542, 560 (E.D. Ky. 2010); *Maxey v. State Farm Fire and Cas. Co.*, 2009 WL 3698422, at *5 (S.D. Ohio Nov. 4, 2009); *Plona v. United Parcel Serv.*, 2008 WL 11449137, at *3 (N.D. Ohio Mar. 25, 2008).

Defendants are not prejudiced by the Rule 26 violation. "One indicia of harmless is if the opposing party had sufficient knowledge or awareness of the disputed item." *Plona*, 2008 WL 11449137, at *3 (citing *Vance ex. rel. Hammons v. United States,* 1999 WL 455435, at *5-6 (6th

(5:18CV1284)

Cir. June 25, 1995). From early on in the case, Defendants were aware that Plaintiffs intended to rely on Dr. Inman's deposition, which included testimony about the Hendersons' competency ranging back to 2006. *See* ECF No. 25-1; 21-4; *see also* ECF No. 25 at PageID #: 282. Plaintiffs also provided a copy of the entire deposition transcript to Defendants in their answer to interrogatories. *See* ECF No. 25 at Page ID #: 280; ECF No. 25-2; ECF No. 21 at PageID #: 153. Defendants asked Plaintiffs to identify experts in the guardianship proceedings in which the Henderson were adjudicated incompetent. In response, Plaintiffs identified Dr. Inman. ECF No. 21-4 at Page ID# 193. In addition, in response to inquiries about evidence of the Hendersons' mental state, cognitive ability, and competency, Plaintiffs responded, "Please see the attached deposition testimony from Dr. Matthew Inman . . . . Please see his testimony regarding their mental status." *Id.* at PageID #: 189-90. Defendants have had ample notice since this case commenced about Dr. Inman's identity, his deposition testimony, and the facts, letters, and reports underlying his conclusions. Moreover, the Court does not discern any evidence suggesting Plaintiffs acted in bad faith. Because Defendants have not been prejudiced and the violation was not done in bad faith, Dr. Inman's testimony need not be excluded.

**2. Hearsay**

Defendants also argue that Dr. Inman's deposition is inadmissible hearsay that cannot be considered on summary judgment. Defendants waived their hearsay argument by raising it for the first time in their reply brief. *See Hunt v. Big Lots Stores, Inc.*, 244 F.R.D 394 (N.D. Ohio 2007). Nevertheless, because consideration of the deposition on summary judgment is dispositive, the Court will assess the merits of Defendants' claim.

9

(5:18CV1284)

Parties may rely on depositions to support factual positions at summary judgment. Fed. R. Civ. P. 56(c)(1)(a). As explained above, however, this deposition was conducted in a different case, not this case before the Court. The evidence must still be admissible for the Court to consider it on summary judgment. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). Hearsay may not be considered during summary judgment. *See Pack v. Damon Corp.*, 434 F.3d 810, 815 (6th Cir. 2006).

The focus for the Court is not the *form* of the evidence at summary judgment, but whether the evidence would be admissible at trial. *See Tranter v. Orick*, 460 Fed.Appx. 513, 514 (6th Cir. 2012). In other words, "[t]he proferred evidence need not be in admissible *form*, but its *content* must be admissible." *Bailey v. Floyd Cty. Bd. of Education*, 106 F.3d 135, 145 (6th Cir. 1997). Plaintiffs may rely on the deposition to oppose Defendants' motion for summary judgment "even if the deposition itself is not admissible at trial, provided substitute oral testimony would be admissible and create a genuine issue of material fact." *Id.*

Dr. Inman's testimony in his deposition is not hearsay. Plaintiffs may not read Dr. Inman's deposition onto the record at trial, but they may call Dr. Inman to testify about his examinations of the Hendersons, the symptoms they exhibited during treatment, and their mental decline over the years. In order for something to constitute hearsay, there must be a statement. Fed. R. Evid. 801(c). None of these facts, testified to in court, are statements or would even elicit statements. Instead, they are facts independently based upon Dr. Inman's own personal knowledge. While Plaintiffs may face a hurdle having this evidence admitted at trial, they may

10

(5:18CV1284)

rely on the facts Dr. Inman testified about in his deposition because the facts are not hearsay and may be considered on summary judgment.

### B. The Henderson's Incompetency

Defendants urge the Court to grant summary judgment in their favor on two bases. First, Defendants argue that Plaintiffs have not provided enough evidence to satisfy their burden of demonstrating the Hendersons' incompetence during the 2010 Agreement and 2013 Amendment by clear and convincing evidence. Second, even if Plaintiffs have met their burden, Defendants contend the Court must grant summary judgment because Defendants acted in good faith, the terms of the transaction were fair, and the status quo cannot be restored among the parties.

#### 1. Plaintiffs' evidence of the Hendersons' mental incompetency

Under Ohio law, "a party seeking to void a contract because of lack of mental incapacity has the burden of proof by clear and convincing evidence." *Giurbino v. Giurbino*, 626 N.E.2d 1017, 1026 (Ohio Ct. App. 1993). Plaintiffs will satisfy this burden if the evidence "produce[s] in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 120 N.E.2d 118, 123 (Ohio 1954). To determine whether the Hendersons were competent to enter into an agreement, the test is "whether the person claimed to be incompetent understood the nature of the transaction and the effects of his or her own actions." *Giurbino*, 626 N.E.2d at 1026..

Adjudication of the Hendersons' competency in 2015 is not conclusive as to their capacity to enter into contracts years beforehand. *See Lyon v. Jackson*, 132 N.E.2d 779 (Ohio Ct. App.). Plaintiffs must demonstrate by clear and convincing evidence that the Hendersons

11

(5:18CV1284)

were mentally incompetent at the time of the 2010 Agreement and 2013 Amendment. *Id.* Although a party who is not adjudicated mentally incompetent at the time of contract execution is presumed to be competent to enter into a contract, the presumption may rebutted by evidence to the contrary. *See Cameron v. State Teachers Ret. Bd. of Ohio*, 2000 WL 1753116, at *6 (Ohio Ct. App. Nov. 30, 2000).

Viewed in the light most favorable to the nonmoving party, *Matsushita*, 475 U.S. at 587-88, Plaintiffs have provided sufficient evidence to create a genuine dispute of material fact about the Hendersons' incompetency at the time of the 2010 Agreement and 2013 Amendment. Dr. Inman testified that it was obvious to him four years before the first contract that the Hendersons were mentally incompetent. *See* ECF No. 21-6 at PageID #: 211 ("As I said earlier, I met Virginia Henderson in 2006 as a patient. I knew right away she had dementia . . . . And there is no way that this lady should be involved in making any legal decisions."); *id.* at PageID #: 214 ("Time would prove that [John] was paranoid. He was delusional."). He concluded that Ms. Henderson was incapable of making decisions "long prior to" 2014. *Id.* at PageID #: 213. Dr. Inman also noted that Ms. Henderson had memory issues as early as 2009, nearly a year before the 2010 Agreement. *Id.* at PageID #: 247. In a letter written for the guardianship proceedings after the 2013 Amendment, Dr. Inman wrote that Ms. Henderson "does not functionally read or write." *Id.* at PageID #: 212. Several years prior to 2014, Ms. Henderson "could not remember who the President was" or the year that it was. *Id.* at PageID #: 213. Dr. Inman also testified that Mr. Henderson was paranoid, delusional, and would also talk to people who were not actually there. *Id.* at PageID #: 214-15. Given that testimony, a reasonable fact

12

(5:18CV1284)

finder could determine that the Hendersons were mentally incompetent to enter into the contracts in both 2010 and in 2013.

Defendants insist that Dr. Inman's testimony cannot establish a genuine dispute about the Hendersons' capacity to enter into a contract at the time of these transactions because he was unaware that they had entered into those contracts. ECF No. 21 at PageID #: 153-54. According to Defendants, because Dr. Inman was unaware of the contracts in 2010 or 2013 specifically, his testimony about the Hendersons' mental capabilities *before* and *after* these contracts does not shed any light about their capacity to enter these agreements. *Id.*; ECF No. 26 at PageID #: 359-61. Although it is true that Dr. Hendersons' testimony mainly consists of evidence before and after the contracts, Defendants' position is not convincing. A reasonable trier of fact could conclude that the evidence of an elderly couple's incompetency years before the contracts were entered is sufficient to find that they were incompetent at the time of the contract years later.

Defendants also claim that Dr. Inman did not provide opinions about the Hendersons' capacity to enter into contract in either 2010 or 2013. ECF No. 26 at PageID #: 359-60. But his testimony about their mental condition encompasses when the 2010 Agreement was entered into, the time period between the two contracts, and when the Hendersons signed the 2013 Amendment. Dr. Inman began treating them in 2006 and he noted that their mental capacities declined throughout the six to eight years since he first saw them. *See* ECF No. 21-6 at PageID #: 212-16. The 2010 Agreement and 2013 Amendment fall squarely within that six- to eight-year time frame during which Dr. Inman testified the Hendersons' mental capacity was diminishing. Moreover, as discussed above, Dr. Inman concluded that the Hendersons were

13

(5:18CV1284)

incapable of entering into contracts long before 2014. *Id.* at PageID #: 213. A triable issue remains as to whether the Hendersons lacked the capacity to enter into the contract in 2010 and again in 2013.

The evidence of the Hendersons' incompetency from four years prior to and a year before the 2010 Agreement, and during the time frame between the two contracts, creates a genuine dispute of material fact about whether the Hendersons were mentally incompetent that cannot be resolved on summary judgment.

### 2. Defendants' Good Faith Affirmative Defense

Even if Plaintiffs can demonstrate that the Hendersons were incompetent at the time of the contract, the contracts may still be enforced if they were entered in good faith. *Charles Melbourne & Sons, Inc. v. Jesset*, 163 N.E.2d 773, 776 (Ohio Ct. App. 1960).

> Where the other party to a contract is ignorant of the lack of mental capacity of the party he is dealing with, and the transaction was fair, and no advantage was taken of the incompetent, and he has received the full benefits of the transaction and cannot put the other contracting party in status quo, such contract may be enforced against the incompetent party.

*Id.* As the party seeking to enforce the contract despite a potential showing of the Hendersons' incapacity to enter into contracts, Defendants bear the burden of demonstrating they acted in good faith and had no knowledge of the Hendersons' mental incompetency. *See Hosler v. Beard*, 43 N.E. 1040, 1044 (Ohio 1896) ("[T]he defense of infancy or insanity . . . is as complete a defense in actions on contracts other than those for necessaries as in actions brought on contracts for necessaries, and it is just as essential that it be overcome by proper evidence in the one case as in the other before the [party] can recover.").

14

(5:18CV1284)

When one contracting party who is later found mentally incompetent but has not been adjudicated to be mentally incompetent before an agreement is entered into, there is a presumption that the other party "may reasonably suppose he is sane and make a bargain with him on that assumption, and if no unfair advantage was taken of him the contract may stand." *Hungtington Nat'l Bank v. Toland*, 594 N.E.2d 1103, 1105 (Ohio Ct. App. 1991) (citations omitted). But this presumption can be rebutted with evidence of mental incapacity. *See Cleveland Trust Co. v. Capital Nat. Bank*, 1979 WL 210513, at *2-3 (Ohio Ct. App. 1979). The affirmative defense raised by Defendants is measured by "*good faith and reasonableness* under all the circumstances" including "whether there was or should have been knowledge of the incompetency." *Id.* at 2.

In *Cleveland Trust Company*, the executor of Junior W. Everhard's estate filed an action to set aside a contractual agreement Everhard entered into with the bank defendant a few months before his death. The defendant appealed after a jury found in favor of the plaintiff, despite the defendant raising the affirmative defense that the bank was unaware of Everhard's incapacity. *Id.* at *1. At trial, the plaintiff provided evidence that Everhard was found to be incompetent by an expert only a few weeks after entering into the contract. *Id.* at *2. Additionally, the plaintiff demonstrated that Everhard was 85 years old; he had a chronic psychiatric condition; he was hard of hearing and had poor vision; dressed shabbily; and that he had not paid numerous bills for significant periods of time. *Id.* The court found that this evidence not only established Everhard's mental incompetency, but also that "there was sufficient evidence to support a finding that Capital should have been aware of this incapacity." *Id.* at *3. Moreover, the jury

15

(5:18CV1284)

was justified in concluding that "the bank should have inquired further into his ability to fully understand and appreciate the nature and consequences of the transaction he was entering into." *Id.*

The facts in this case are strikingly similar to *Cleveland Trust Company*. In 2006, four years before the first contract was entered into, Dr. Inman "knew right away" that Ms. Henderson had dementia. ECF No. 21-6 at PageID #: 211. Mr. Henderson was "paranoid," "delusional," and "would make up stories." *Id.* at PageID #: 214. Like Everhard, Ms. Henderson was also hard of hearing. *Id.* at PageID #: 211. Plaintiffs' evidence here is perhaps even stronger than the plaintiff in *Cleveland Trust Company* because Plaintiffs demonstrated that all these medical symptoms were occurring years *before* the transactions, whereas the *Cleveland Trust Company* plaintiff was only discovered to be incompetent by an expert a few weeks *after* the contract. Furthermore, Dr. Inman suggests that the Hendersons' cognitive abilities have progressively worsened over the years in the same manner as Everhard's condition did. *See id.* at PageID # 210-11, 213, 215. Just as Everhard's old age was relevant to the jury's determination, the Court considers that Ms. Henderson was in her eighties and Mr. Henderson was in his seventies when they signed the agreements. *See* ECF No. 21-5 at PageID #: 201 (indicating that John Henderson was 79 years old five years after he entered into the transaction with Anschutz). The Hendersons' old age, while not conclusive itself, *see Monroe v. Shivers, 162 N.E. 780 (Ohio Ct. App. 1927)*, is "certainly worthy of consideration in view of the other evidence presented." *Cleveland Trust Co.*, 1979 WL 210513 at *2. As in *Cleveland Trust*

16

(5:18CV1284)

*Company*, a trier of fact considering all this evidence could find that Defendants should have reasonably been aware of the Hendersons' incapacity.

In support of their motion, Defendants submitted a data entry from one of Chesapeake's land representatives who spoke with Mr. Henderson about the 2013 Amendment. ECF No 21-7. According to Defendants, this submission does not contain any evidence that would have reasonably placed them on notice of the Hendersons' incompetency. *See* ECF No. 21 at PageID #: 156. Defendants also assert that the land representative spoke to John Henderson, who said they were represented by an attorney. *See* ECF No. 21-7; ECF No. 21- 8 at PageID #: 269-70, ¶¶ 20-28. But, as discussed above, similarly to *Cleveland Trust Company*, Plaintiffs' evidence could lead a reasonable fact finder to conclude Defendants should have been on notice in 2013.

Even if the Court finds that the evidence submitted by Defendants demonstrates that *they* were not reasonably aware of the Hendersons' incapacity in 2013, Defendants have not provided evidence to demonstrate that *Anschutz,* their predecessor in interest, was reasonably unaware in 2010. The only support Defendants provide is an Addendum to the 2010 Agreement, signed the same day, which indemnifies the Hendersons and places certain restrictions on what Anschutz can do on the land while drilling. ECF No. 21-2. Defendants claim that the favorable terms in this Addendum "negates any inference that the Hendersons were incompetent" and that the Addendum also demonstrates that "Anschutz would have no basis for believing the Hendersons had any kind of mental incompetency." ECF No. 21 at PageID #: 155-56. It is difficult to see the logical connection between this Addendum and whether Anschutz reasonably should have been on notice. Besides failing to prove that these terms were actually negotiated, these terms in

17

(5:18CV1284)

the Addendum bear no relation to Anschutz' ability to determine whether the Hendersons were incompetent at the time they entered into the 2010 Agreement. Defendants' single piece of evidence cannot establish that no reasonable fact finder could find that Anschutz should have reasonably been on notice of the Hendersons' mental incompetency. To the contrary, Plaintiffs' panoply of evidence demonstrates that there is a genuine dispute of material fact that cannot be resolved on summary judgment.

Because a genuine dispute of material fact exists as to whether Defendants and Anschutz had reasonable notice of the Henderson' mental incompetency, the Court need not consider the remaining elements of the good faith affirmative defense, namely, whether the transaction was fair or whether the status quo can be restored among the parties. *Charles Melbourne & Sons, Inc.*, 163 N.E.2d at 776.

### IV. Conclusion

For the reasons stated above, Defendants' motion for summary judgment is denied. A separate trial Order will issue.


IT IS SO ORDERED.

December 31, 2019            */s/ Benita Y. Pearson*
Date                         Benita Y. Pearson
                                   United States District Judge